## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

REYNALDO MOYA,

      Plaintiff,

vs.                                                                    No. CIV 20-0431 JB/KK

SAN JUAN COUNTY ADULT DETENTION
CENTER; SAN JUAN COUNTY ADULT
DETENTION CENTER MEDICAL
PROVIDERS, Employees of Well Path -- A
Correct Care Solutions Company; PHILIP
ERNEST, Surgeon M.D.; DANIEL MANNAS,
Urologist M.D., and GLOBAL TEL LINK
CORPORATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** comes before the Court on the Plaintiff's Complaint for Violation of

Civil Rights (Prisoner Complaint), filed May 5, 2020 (Doc. 1)("Complaint").    Additional

pleadings supplement the Complaint with factual allegations.    See Brief Testimony of Reynaldo

Moya, filed May 14, 2020 (Doc. 7)("Brief"); Declaration of Reynaldo Moya, filed May 14, 2020

(Doc. 8)("First Decl."); Declaration of Reynaldo Moya, filed May 14, 2020 (Doc. 9)("Second

Decl.").    When he filed the Complaint, Plaintiff Reynaldo Moya was a pretrial detainee at the San

Juan County Adult Detention Center, in Farmington, New Mexico ("San Juan Detention").    He

appears pro se and is proceeding in forma pauperis.    He alleges, among other things, that his

constitutional rights to adequate medical care and to humane conditions of confinement were

violated.    See Complaint at 4.    He also alleges state tort law violations.    See Complaint at 4.

Having carefully reviewed the pleadings under 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal

Rules of Civil Procedure, the Court will dismiss the federal claims and grant leave to file an amended complaint. The Court will defer a determination whether to exercise supplemental jurisdiction over the state law claims.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court takes the following facts from three documents filed within a week of the Complaint, which provide factual allegations supporting the Complaint: (i) Moya's Brief; (ii) Moya's First Decl.; and (iii) Moya's Second Decl. For the limited purpose of this Memorandum Opinion and Order, the Court assumes Moya's allegations are true.

Beginning in April, 2019, and at all times relevant to this case, Moya was in custody at San Juan Detention. See Second Decl. at 1. Moya has been "legally [d]isabled since 1998" because of traumatic brain injuries, and is, therefore, housed in a "Handicap Cell." Second Decl. at 1. While in custody, on August 2, 2019, Moya was injured and developed multiple hernias. See First Decl. at 1; Second Decl. at 1.[1] On October 24, 2019, a nurse, whom Moya identifies as "RN Debbie,"[2] gave him "verbal and written orders" to avoid stairs and strenuous activity after seeing "one very painful egg-size bulge protruding" from Moya's groin. Second Decl. at 1. On November 1, 2019, two nurses, whom Moya identifies as "RN Bernie" and "RN Carla," repaired one of Moya's hernias in the medical unit at San Juan Detention. See Second Decl. at 1. Two days later, and for two days in a row, Lt. Calhoun forced Moya to climb up and down stairs, contrary to the October 24, 2019, medical orders. See Second Decl. at 1. On a third day, he was

---

[1]The source of Plaintiff Reynaldo Moya's hernias is unclear.

[2]Moya does not provide full names for several of the individuals that he mentions. Thus, the Court references these individuals using the information that Moya has provided.

forced, though it is not clear by whom, to climb stairs again.   <u>See</u> Second Decl. at 2.   As a result

of this activity, Moya's condition worsened.   <u>See</u> Second Decl. at 2. About three weeks later,

Moya was taken to a hospital in Farmington, New Mexico where a Dr. Philip Ernest surgically

repaired the hernias using implanted "devices and materials."   Second Decl. at 2.   After the

surgery, Moya suffered several painful health issues and medical complications, which he details

in his pleadings.   <u>See</u>, <u>e.g.</u>, First Decl. at 1; Second Decl. at 2.   At San Juan Detention, Moya has

been given some, but allegedly inadequate, treatment for his medical issues, and he continues to

suffer "excruciating pain" that worsens daily.   First Decl. at 2.   <u>See</u> Second Decl. at 2.

San Juan Detention requires inmates to submit their requests for medical treatment and

medications through forms known as "Med-Kites."   Brief at 1.   <u>See</u> San Juan County Adult

Detention Center Detainee Rules and Regulations at 4 (dated September 6, 2018), filed May 14,

2020 (Doc. 7 at 3)("San Juan Rules")(stating that "MEDICAL Request Forms ('Kites') are

available [from] Security Staff").   The San Juan Rules inform detainees that they have the right

to medical care and the right to file grievances.   <u>See</u> Brief at 1 (referencing the rights enumerated

in the attached San Juan Rules); San Juan Rules at 3 (informing detainees of their right to "proper

health care, including . . . medical . . . treatment when necessary"); <u>id.</u> at 4 (informing detainees of

their "right to file a grievance," and explaining that "MEDICAL grievances will be addressed by

the Health Services Administrator.   If the grievance is appealed, it will be handled by the Warden

or his/her designee.")   The San Juan Rules specify that detainees are to submit grievances via

kiosks, <u>see</u> San Juan Rules at 2, but sometime during Moya's detention, San Juan Detention

replaced these kiosks with tablets from the Global Tel Link Corporation,  <u>see</u> Brief at 1; First

Decl. at 1; Second Decl. at 2.   The devices and the applications used to submit grievances and

requests are sometimes slow or closed, impeding Moya's use of them.   <u>See</u> Brief at 2.   Moya has submitted, however, medical grievances and appeals to various officials at San Juan Detention, namely, to Warden Havel, Deputy Warden Webb, and Health Service Administrator Maya. <u>See</u> First Decl. at 2-4.   He has received several responses from Webb, and some responses from Lt. F. Mejia.   <u>See</u> First Decl. at 3-4.   The responses, which Moya recites in his pleadings, indicate typically that the matter will be referred to medical staff and are "marked as unfounded and closed . . . ."   First Decl. at 2-3.   In one instance, Moya submitted a medical grievance complaining of "inhumane conditions" after he and his cellmate were forced to remain locked in a cell for hours because a medically ordered stool sample was not collected as it should have been. First Decl. at 3.   To that grievance, Webb responded that a protocol would be developed for the collection of samples and provided some detail about how the jail would avoid a recurrence of the incident.   <u>See</u> First Decl. at 3.

In early 2020, Moya had two meetings with San Juan Detention staff.   The first was with Maya, Calhoun, and "RN Brandy."   Brief at 1.   Moya alleges that Calhoun threatened Moya with disciplinary action if Moya continued requesting medical treatment.   <u>See</u> Brief at 1-2.   Moya alleges that, ten days later, he was brought to a conference with Webb, Lt. Cook, Maya, Medical Provider Sarah, and Brandy.   <u>See</u> First Decl. at 4.   According to Moya, Webb wanted to know "about the many medical grievances filed" and to "find out if [Moya] was abusing the" San Juan Detention's grievance process.   First Decl. at 4.   Moya allegedly told those present that his requests for treatment stemmed from his numerous and painful medical issues.   <u>See</u> First Decl. at 4.   It is not clear from Moya's pleadings what, if any, action San Juan Detention staff took concerning Moya's medical care after these meetings or whether he was disciplined for allegedly

abusing the grievance process.

Based on the foregoing and other related allegations, Moya brings this action against San Juan Detention, San Juan County Medical Providers, Dr. Ernest, Dr. Daniel Mannas -- a urologist -- and Global Tel.   <u>See</u> Complaint at 3.   Moya's enumerated claims, undifferentiated to the respective Defendants, are medical negligence, medical malpractice, cruel-and-unusual punishment, deliberate indifference to medical needs, civil rights violations, inadequate medical care, and a violation of his constitutional rights as a pretrial detainee.   <u>See</u> Complaint at 4.   He seeks damages for pain and suffering.   <u>See</u> Complaint at 4.   State law governs Moya's medical negligence and medical malpractice claims.   The remaining claims arise under the Constitution of the United States of America and 42 U.S.C. § 1983.

### <u>LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS</u>

Section 1915A of Title 28 of the United States Code requires the Court to conduct a sua sponte review of all civil complaints where the plaintiff is incarcerated and seeks relief from a government official.   <u>See</u> 28 U.S.C. § 1915A.   The Court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).   The Court may also dismiss a complaint sua sponte under rule 12(b)(6) if "'it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing [the plaintiff] an opportunity to amend [the] complaint would be futile.'"   <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991)(quoting <u>McKinney v. Oklahoma</u>, 925 F.2d 363, 365 (10th Cir. 1991)). In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th

Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)). A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd., but not in Makor Issues & Rights, Ltd. v. Tellabs, Inc.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff" (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) . . . , on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive rule 12(b)(6) review, a Moya's complaint must contain sufficient "facts that, if

- 6 -

assumed to be true, state a claim to relief that is plausible on its face."   Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."   Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original).   The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."   [Bell Atl. Corp. v. Twombly, 550 U.S. at 570]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

In conducting the initial review, a pro se plaintiff's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."   Hall v. Bellmon, 935 F.2d at 1110.   If the Court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements."   Hall v. Bellmon, 935 F.2d at 1110.   At the same time, however, pro parties must file a legible pleading that complies with rule 8 of the Federal

Rules of Civil Procedure.   That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."   Fed. R. Civ. P. 8(a).   "'It is not the role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action.'"   McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir. 2014)(unpublished)[3] (quoting Schupper v. Edie, 193 F. App'x 744, 746 (10th Cir. 2006)).   See Pola v. Utah, 458 F. App'x 760, 761 (10th Cir. 2012)(unpublished)(affirming dismissal of complaint that "included everything but the kitchen sink").   Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" various documents "to ascertain which . . . pertinent allegations to which a response is warranted."   McNamara v. Brauchler, 570 F. App'x at 743.

---

[3] McNamara v. Brauchler is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that McNamara v. Brauchler, Schupper v. Edie, 193 F. App'x 744, 746 (10th Cir. 2006), Pola v. Utah, 458 F. App'x 760 (10th Cir. 2012), White v. Utah, 5 F. App'x. 852 (10th Cir. 2001), Wishneski v. Andrade, 572 F. App'x 563 (10th Cir. 2014), and Abdelsamed v. United States, 13 F. App'x 883 (10th Cir. 2001), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order of Dismissal.

**LAW REGARDING § 1983 AND PRETRIAL DETAINEE CLAIMS FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

Section 1983 is a vehicle for vindicating substantive rights against State officials under the Constitution.   See Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Albright v. Oliver, 510 U.S. 266, 271 (1994)(noting that § 1983 creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution); Bolden v. City of Topeka, 441 F.3d 1129 (10th Cir. 2006).   Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.   Only a "person" may be held liable under § 1983. 42 U.S.C. § 1983.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by State government officials acting under color of law that result in a deprivation of rights the Constitution secures.   See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).   There must be a connection between official conduct and violation of a constitutional right.   Conduct that is not connected to a constitutional violation is not actionable under § 1983.   See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates.   See Monell v. Dep't of Soc. Servs, 436 U.S. 658, 691 (1978).   A plaintiff must plead that each government official, through the official's individual actions, has violated the Constitution.   See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).   To succeed under § 1983, the plaintiff must allege an identified

official's personal involvement in the alleged constitutional violation.  See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).  In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her."  Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008)(emphasis in original).  Generalized statements that the defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, are not sufficient to state any claim for relief.  See Robbins v. Oklahoma, 519 F.3d at 1249-50.

## LAW REGARDING PRETRIAL DETAINEES' RIGHT TO ADEQUATE MEDICAL CARE AND TO HUMANE CONDITIONS OF CONFINEMENT

In 1994, the Supreme Court of the United States of America held that the Eighth Amendment to the Constitution of the United States imposes a duty on prison officials to provide humane conditions of confinement and adequate medical care.  See Farmer v. Brennan, 511 U.S. 825, 832, (1994).  These conditions include adequate food, clothing, shelter, and medical care, but also a more general requirement to "'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  The cruel-and-unusual punishment and deliberate indifference standards, however, do not apply to pretrial detainees.   A detainee may not be punished before an adjudication of guilt in accordance with due process of law.   See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 n.40, 674 (1977); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-67, 186 (1963).

Instead, a pretrial detainee's claims proceed under the Fourteenth Amendment.

See Garcia v. Salt Lake Cnty., 768 F.2d 303, 307 (10th Cir. 1985)(holding that, although the Eighth Amendment protects the rights of convicted prisoners and the Fourteenth Amendment protects the rights of pretrial detainees, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates"); Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)(citing Bell v. Wolfish, 441 U.S. at 535)("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, . . . the Eighth Amendment standard provides the benchmark for such claims.").   In the context of a detainee's medical needs, the Tenth Circuit has held that, to state a cognizable claim, a plaintiff "'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).   This standard includes both an objective component and a subjective component.  See Clark v. Colbert, 895 F.3d 1258, 1267 (10th Cir. 2018).   To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."   Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006)(quoting Farmer v. Brennan, 511 U.S. at 834).

"'A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   Clark v. Colbert, 895 F.3d at 1267 (quoting Self v. Crum, 439 F.3d 1227, 1230-33 (10th Cir. 2006))(alteration in Clark v. Colbert).   The subjective component requires the plaintiff to establish that a medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw

- 11 -

the inference." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(quoting Farmer v. Brennan, 511 U.S. at 837)(alteration in Mata v. Saiz).

Under both the Eighth Amendment and the Fifth Amendment's Due Process Clause, to establish a claim for "conditions of confinement, a plaintiff must satisfy two requirements," showing first that the deprivation is sufficiently serious, and second that the prison officials' deliberate indifference caused the deprivation. Craig v. Eberly, 164 F.3d at 495. "A plaintiff 'must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to [his] health or safety." DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001)(quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

## LAW REGARDING DETENTION CENTER LIABILITY UNDER § 1983

As general rule, "a detention facility is not a person or legally created entity capable of being sued." White v. Utah, 5 F. App'x. 852, 853 (10th Cir. 2001)(unpublished). The Court has applied this rule in the context of § 1983, holding that "a detention center is not a suable entity in a § 1983 action." Apodaca v. N.M. Adult Prob. & Parole, 998 F.Supp.2d 1160, 1190 (D.N.M. 2014)(Browning, J.). A detention center is not a suable entity, "because it is not a 'person' under 42 U.S.C. § 1983." Kristich v. Metro. Det. Ctr., No. CIV 15-1147 JB/LAM, 2016 WL 5387675, at *2 (D.N.M. September 2, 2016)(Browning, J.)(quoting 42 U.S.C. § 1983); Wishneski v. Lea Cnty. Det. Ctr., No. CIV 11-1057 JB/WPL, 2012 WL 1688890, at *2 (D.N.M. May 2, 2012)(Browning, J.)(holding that "'a detention facility is not a person or legally created entity capable of being sued'" (quoting Aston v. Cunningham, 216 F.3d 1086, No. 99-4156, 2000 WL 796086, at *4 n.3 (10th Cir. 2000)(unpublished table decision)). "In other words, suing a detention facility is the equivalent of attempting to sue a building for purposes of

§ 1983." Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING ACTION UNDER COLOR OF STATE LAW

Under § 1983, liability attaches only to conduct occurring "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ." 42 U.S.C. § 1983. Thus, the only proper defendants in a § 1983 action are those who "'represent [the State] in some capacity, whether they act in accordance with their authority or misuse it.'" Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)(quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)). A person acts under color of State law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Polk Cnty. v. Dodson, 454 U.S. 312, 317-18 (1981). A showing that the defendants were acting "under color of state law" is a jurisdictional prerequisite for a § 1983 action. Polk Cnty. v. Dodson, 454 U.S. at 315. The only proper defendants in a § 1983 claim are State officials. See Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447. To establish subject-matter jurisdiction for a civil rights action, the plaintiff must show that the defendant acted under color of State law. See 28 U.S.C. § 1343(a)(3).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

The federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising

between citizens of different states -- diversity jurisdiction.   See 28 U.S.C. §§ 1331-1332. Section 1367 additionally grants the federal courts power to hear claims over which the court otherwise lacks original jurisdiction, if those claims are part of the same constitutional case as claims over which the court has original jurisdiction.   See 28 U.S.C. § 1367(a).

The United States Court of Appeals for the Tenth Circuit has held that deciding whether to exercise supplemental jurisdiction is a matter of judicial discretion.   See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).   The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "'When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'"   Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).

## ANALYSIS

## I.   THE COURT WILL DISMISS MOYA'S § 1983 CLAIMS AGAINST SAN JUAN DETENTION.

As noted above, detention facilities are not subject to liability under § 1983, because they are not "persons" as that term is used in this statutory context.   Kristich v. Metro. Det. Ctr., 2016 WL 5387675 at *2; Wishneski v. Lea Cnty. Det. Ctr., 2012 WL 1688890, at *2.   Suing San Juan Detention as a Defendant in this action is akin to suing a building.   See Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs, 272 F. Supp. 3d at 1267.   Such claims are not viable.   Accordingly, the Court will dismiss Moya's § 1983 claims against San Juan Detention.

II.     **"SAN JUAN COUNTY ADULT DETENTION CENTER MEDICAL PROVIDERS"**
        **IS NOT A PROPER DEFENDANT.**

        To the extent that Moya seeks to sue the entity or individual identified in the caption as

"San Juan County Adult Detention Center Medical Providers, Etc." he must file an amended

complaint sufficiently identifying this Defendant (or these Defendants).   Complaint at 3.   The

Tenth Circuit has "recognized the ability of a plaintiff to use unnamed defendants so long as the

plaintiff provides an adequate description of some kind which is sufficient to identify the person

involved so process eventually can be served."   Roper v. Grayson, 81 F.3d 124, 126 (10th Cir.

1996).   If the San Juan Detention Medical Providers are individuals, but Moya does not know

their names, he should file an amended complaint describing them and stating what their personal

involvement was in any alleged constitutional deprivation.   Alternatively, if Moya's claim is

against an entity providing medical care to San Juan Detention inmates, he should amend the

caption and the allegations accordingly.   If it is the latter, Moya should be mindful that in the

Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must

demonstrate the existence of the same sort of custom or policy that permits imposition of liability

against municipalities under Monell v. Dep't Soc. Servs., 436 U.S. 658, 694 . . . (1978)."

Wishneski v. Andrade, 572 F. App'x 563, 567 (10th Cir. 2014)(unpublished)(citing Dubbs v. Head

Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003); DeVargas v. Mason & Hanger-Silas Mason Co.,

844 F.2d 714, 722-23 (10th Cir. 1988); Shields v. Illinois Dep't of Corr., 746 F.3d 782, 790 n.2

(7th Cir. 2014)).   Moya must allege the entity's official policy is the "moving force" of a violation

of his constitutional rights.   Monell v. Dep't Soc. Servs., 436 U.S. at 694-95.

III.   **MOYA HAS NOT ALLEGED ADEQUATELY THAT THE REMAINING DEFENDANTS ARE STATE ACTORS.**

Moya identifies Dr. Ernest, Dr. Mannas, and Global Tel as Defendants.   He does not allege, however, that they are State actors, nor do the factual allegations support an inference that they were acting under color of State law.   If Moya wishes to pursue claims against any of these Defendants under § 1983 based on a theory that they violated his constitutional rights, he should file an amended complaint alleging facts to show that these Defendants exercised power "possessed by virtue of state law and made possible only because the[y were] clothed with the authority of state law."   Polk Cnty. v. Dodson, 454 U.S. at 317-18.

IV.   **MOYA HAS NOT PLED A VIABLE FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM.**

The allegations in Moya's pleadings are insufficient to state a viable Fourteenth Amendment deliberate indifference claim against any named Defendant.   To the extent that Moya's allegations might support a theory that certain State actors exhibited deliberate indifference to his medical needs, the individuals identified in the pleadings are not named as Defendants in this lawsuit.   As an example, Moya alleges that Calhoun forced him to climb up and down the stairs contrary to medical orders known to him, thereby exacerbating Moya's injuries.   See Second Decl. at 1.   Calhoun, however, is not a Defendant in this action.   As to the individuals that are identified as Defendants, i.e., Dr. Ernest and Dr. Mannas, not only does Moya not allege that they are State actors, but his pleadings are devoid of allegations showing that they knew of, but remained deliberately indifferent to, his serious medical needs.   See Mata v. Saiz, 427 F.3d at 751.   Mere involvement in Moya's medical care is insufficient to state a deliberate indifference claim against a prospective defendant.   The Court will provide Moya an opportunity

- 16 -

to amend his Complaint in accordance with the legal standards set forth herein.   If he chooses to

pursue a deliberate indifference claim, he should name as Defendants those individuals who were

aware of, but remained deliberately indifferent to, his serious illness or injury, stating with

specificity who did what to him in violation of his constitutional rights.

## V.    MOYA HAS NOT PLED A VIABLE FOURTEENTH AMENDMENT CLAIM FOR INHUMANE CONDITIONS OF CONFINEMENT.

To the extent Moya seeks to state a claim for inhumane conditions of confinement, the

Court will dismiss that claim.   The Court construes Moya's claim to arise from a single incident

in which he and his cellmate were locked in their cell with an uncollected stool sample for hours.

His pleadings show that, once he alerted jail officials to the issue by filing a grievance, Webb

responded by stating that he would implement procedures to prevent a recurrence of such an

incident.   Even were the Court to assume that the incident created a condition that was "more than

uncomfortable" and instead "rose to the level of . . . posing a substantial risk of serious harm" to

Moya's health, DeSpain v. Uphoff, 264 F.3d at 973, Moya's allegations do not demonstrate

deliberate indifference.   Instead, the allegations suggest that jail officials took -- or at the least

would prospectively take -- remedial action.   There are no allegations that the issue persisted or

repeated.

## VI.    THE COURT WILL DISMISS MOYA'S REMAINING CONSTITUTIONAL CLAIMS.

To the extent that Moya seeks to pursue claims for "civil rights violations," or "cruel and

unusual punishment," based on theories other than deliberate indifference to his medical needs or

inhumane conditions of confinement, the Court cannot discern what those theories are, what

constitutional rights were violated, or whose conduct is implicated.   The Court construes Moya's

pleadings broadly, but will not craft legal theories for him.   See Abdelsamed v. United States,
13 F. App'x 883, 884 (10th Cir. 2001)(unpublished)(stating that a pro se litigant's pleadings are
entitled to liberal construction, but the Court is "under no obligation to craft legal theories" for
him); Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009)(stating that notwithstanding
pro se status, the Court will not "construct a legal theory on a plaintiff's behalf").   Having
determined the allegations do not state a cognizable claim for a violation of Moya's federal
constitutional rights, the Court will dismiss these claims pursuant to 28 U.S.C. § 1915A(b)(1).

The Tenth Circuit counsels that courts ordinarily should give pro se inmates an opportunity
to remedy defects in their pleadings.   See Hall v. Bellmon, 935 F.2d at 1110.   The Court will give
Moya an opportunity to file an amended complaint within thirty days of this Memorandum
Opinion and Order's entry.   The Court will defer ruling on whether to exercise supplemental
jurisdiction over any state law claims until Moya files an amended complaint.   If Moya does not
file an amended complaint, the Court may dismiss the federal claims with prejudice and remand
the state law claims to the County of San Juan, Eleventh Judicial District Court, State of
New Mexico.

**IT IS ORDERED** that: (i) each of the federal constitutional claims in the Plaintiff's
Complaint for Violation of Civil Rights (Prisoner Complaint), filed May 5, 2020 (Doc. 1), is
dismissed without prejudice; (ii) Plaintiff Reynaldo Moya may file an amended complaint within
thirty days; and (iii) the Clerk's Office shall mail the Plaintiff a blank Prisoner Civil Rights
Complaint.

UNITED STATES DISTRICT JUDGE

- 18 -

*Parties:*

Reynaldo Moya
Chama, New Mexico

  *Plaintiff pro se*