**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

REYNALDO MOYA,

      Plaintiff,

vs.                                           No. CIV 20-0431 JB/KK

SAN JUAN COUNTY ADULT DETENTION
CENTER; SAN JUAN COUNTY ADULT
DETENTION CENTER MEDICAL
PROVIDERS, Employees of Well Path -- A
Correct Care Solutions Company; PHILIP
ERNEST, Surgeon M.D.; DANIEL MANNAS,
Urologist M.D., and GLOBAL TEL LINK
CORPORATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** comes before the Court following Plaintiff Reynaldo Moya's failure to file an amended complaint. In a Memorandum Opinion and Order of Dismissal, filed November 14, 2022 (Doc. 21)("MOO"), the Court dismissed the federal claims in Moya's Complaint for Violation of Civil Rights (Prisoner Complaint), filed May 5, 2020 (Doc. 1)("Complaint"), without prejudice and gave him thirty days to file an amended complaint. See MOO at 18. The deadline has now passed, and Moya has not filed an amended complaint, sought an extension, or otherwise responded to the MOO. The Court, therefore, will dismiss the federal claims with prejudice. Having deferred a determination on whether to exercise supplemental jurisdiction over Moya's State law claims, the Court now declines to exercise supplemental jurisdiction over the State law claims, and, therefore, dismisses the State law claims without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

When Moya filed the Complaint, he was a pretrial detainee at the San Juan County Adult

Detention Center, in Farmington, New Mexico ("San Juan Detention").  He appears pro se and is proceeding in forma pauperis.  See Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915(b), filed May 6, 2020 (Doc. 3)(permitting Moya to proceed in forma pauperis).  The Court takes the following facts from the Complaint and from Moya's additional pleadings that supplement the Complaint with factual allegations.  See Brief Testimony of Reynaldo Moya, filed May 14, 2020 (Doc. 7)("Brief"); Declaration of Reynaldo Moya (dated May 10, 2020), filed May 14, 2020 (Doc. 8)("First Decl."); Declaration of Reynaldo Moya (dated May 10, 2020), filed May 14, 2020 (Doc. 9)("Second Decl.").

Beginning in April, 2019, and at all times relevant to this case, Moya was in custody at San Juan Detention.  See Second Decl. at 1.  Moya has been "legally [d]isabled since 1998," because of traumatic brain injuries, and therefore was housed in a "Handicap Cell."  Second Decl. at 1. While in custody, on August 2, 2019, Moya was injured and developed multiple hernias.  See First Decl. at 1; Second Decl. at 1.[1]  On October 24, 2019, a nurse, whom Moya identifies as "RN Debbie,"[2] gave him "verbal and written orders" to avoid stairs and strenuous activity after seeing "one very painful egg-size bulge protruding" from Moya's groin.  Second Decl. at 1.  On November 1, 2019, two nurses, whom Moya identifies as "RN Bernie" and "RN Carla," repaired one of Moya's hernias in the medical unit at San Juan Detention.  Second Decl. at 1.  Two days later, and for two days in a row, Lt. Calhoun forced Moya to climb up and down stairs, contrary to the October 24, 2019, medical orders.  See Second Decl. at 1.  On a third day, he was forced, although it is not clear by whom, to climb again the stairs.  See Second Decl. at 2.  As a result of

---

[1]The source of Moya's hernias is unclear.

[2]Moya does not provide full names for several of the individuals that he mentions.  Thus, the Court references these individuals using the information that Moya has provided.

this activity, Moya's condition worsened.  See Second Decl. at 2.  About three weeks later, Moya was taken to a hospital in Farmington, where Dr. Philip Ernest surgically repaired the hernias using implanted "devices and materials."  Second Decl. at 2.  After the surgery, Moya suffered several painful health issues and medical complications, which he details in his pleadings.  See, e.g., First Decl. at 1; Second Decl. at 2.  At San Juan Detention, Moya has been given some, but allegedly inadequate, treatment for his medical issues, and he continues to suffer "excruciating pain" that worsens daily.  First Decl. at 2.  See Second Decl. at 2.

San Juan Detention requires inmates to submit their requests for medical treatment and medications through forms known as "Med-Kites."  Brief at 1.  See San Juan County Adult Detention Center Detainee Rules and Regulations at 4 (dated September 6, 2018), filed May 14, 2020 (Doc. 7 at 3)("San Juan Rules")(stating that "MEDICAL Request Forms ('Kites') are available [from] Security Staff").  The San Juan Rules inform detainees that they have the right to medical care and the right to file grievances.  See Brief at 1 (referencing the rights enumerated in the attached San Juan Rules); San Juan Rules at 3 (informing detainees of their right to "proper health care, including . . . medical . . . treatment when necessary"); id. at 4 (informing detainees of their "right to file a grievance" and explaining that "MEDICAL grievances will be addressed by the Health Services Administrator.  If the grievance is appealed, it will be handled by the Warden or his/her designee." (capitalization in original)).  The San Juan Rules specify that detainees are to submit grievances via kiosks, see San Juan Rules at 2.  Sometime during Moya's detention, San Juan Detention replaced the kiosks with tablets from the Global Tel Link Corporation.  See Brief at 1; First Decl. at 1; Second Decl. at 2.  The tablets and applications that detainees use to submit grievances and requests are sometimes slow or closed, impeding Moya's use of them.  See Brief at 2.  Moya has submitted, however, medical grievances and appeals to various officials at San

Juan Detention, namely, to Warden Havel, Deputy Warden Webb, and Health Service Administrator Maya.  See First Decl. at 2-4.  He has received several responses from Webb, and some responses from Lt. F. Mejia.  See First Decl. at 3-4.  The responses, which Moya recites in his pleadings, indicate that, typically, the matter will be referred to medical staff, and will be "marked as unfounded and closed . . . ."  First Decl. at 2-3.  In one instance, Moya submitted a medical grievance complaining of "inhumane conditions" after he and his cellmate were forced to remain locked in a cell for hours with a medically ordered stool sample, because the sample was not collected as it should have been.  First Decl. at 3.  To that grievance, Webb responded that a protocol would be developed for the collection of samples and provided some detail about how San Juan Detention would avoid a recurrence of the incident.  See First Decl. at 3.

In early 2020, Moya had two meetings with San Juan Detention staff.  The first was with Maya, Calhoun, and "RN Brandy."  Brief at 1.  Moya alleges that Calhoun threatened Moya with disciplinary action if Moya continued requesting medical treatment.  See Brief at 1-2.  Moya alleges that, ten days later, he was brought to a conference with Webb, Lt. Cook, Maya, Medical Provider Sarah[3], and Brandy.  See First Decl. at 4.  According to Moya, Webb wanted to know "about the many medical grievances filed" and to "find out if [Moya] was abusing the" San Juan Detention's grievance process.  First Decl. at 4.  Moya allegedly told those present that his requests for treatment stemmed from his numerous and painful medical issues.  See First Decl. at 4.  It is not clear from Moya's pleadings and briefing what, if any, action San Juan Detention staff took concerning Moya's medical care after these meetings, or whether he was disciplined for allegedly

---

[3]Moya does not name "Medical Provider Sarah" as a Defendant in this action.  First Decl. at 4.  See Complaint at 3.  Instead, he names generally "San Juan County Adult Detention Center Medical Providers, Etc."  Complaint at 3.  In its analysis below, the Court considers Medical Provider Sarah to be this Defendant group's sole adequately identified individual.  Nevertheless, this does not change the Court's ultimate determination regarding Moya's claims.

abusing the grievance process.

Based on the foregoing and other related allegations, Moya filed the Complaint against San Juan Detention, San Juan County Medical Providers, Dr. Ernest, Dr. Daniel Mannas -- a urologist -- and Global Tel.  See Complaint at 3.  Moya's enumerated claims, undifferentiated to the respective Defendants, are: (i) medical negligence; (ii) medical malpractice; (iii) pain and suffering; (iv) cruel-and-unusual punishment; (v) deliberate indifference to medical needs; (vi) civil rights violations; (vii) inadequate medical care; and (viii) a 42 U.S.C. § 1983 claim for a violation of his constitutional rights as a pretrial detainee.  See Complaint at 4.  He seeks damages for pain and suffering.  See Complaint at 4.  New Mexico State law governs Moya's medical negligence and medical malpractice claims.  The remaining claims arise under the Constitution of the United States of America and § 1983.

In the MOO, the Court sets forth the governing law pertaining to each of Plaintiff's federal claims, analyzes the allegations, and concludes that Moya fails to state a claim upon which relief could be granted.  See generally MOO at 1-18.  Consistent with Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), and Moya's pro se prisoner status, the Court sua sponte granted leave to file an amended complaint.  See MOO at 18.  The deadline to amend was thirty days after the filing of the MOO, December 14, 2022.  See MOO at 18.  Moya did not comply, show cause for his noncompliance, or otherwise respond to the MOO.  The Court will summarize, therefore, the reasons for dismissing the Complaint and dismiss Moya's federal claims with prejudice.  The Court declines to exercise supplemental jurisdiction over Moya's State law claims.  If Moya wishes to pursue those claims, he may file an action in State court.

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS AND RULE 12(b)(6)

Section 1915A of Title 28 of the United States Code requires the court to conduct a

sua sponte review of all civil complaints where a plaintiff is incarcerated and seeks relief from a government official.  See 28 U.S.C. § 1915A.  A court must dismiss any prisoner complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915A(b)(1).  Similarly, § 1915(e)(2)(B) directs courts to dismiss a case brought in forma pauperis if the courts determine that the action "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B).  A court may also dismiss a complaint sua sponte under rule 12(b)(6) of the Federal Rules of Civil Procedure if "'it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile.'"  Hall v. Bellmon, 935 F.2d at 1110 (quoting McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir. 1991)).  In other words, the same standard of review applies under rule 12(b)(6), § 1915A(b)(1), and § 1915(e)(2)(B).[4]

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  A complaint's sufficiency is a question of law, and, when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw

---

[4]For a discussion on these and similar provisions' history and interpretation with respect to rule 12(b)(6), see Michael Zachary, Dismissal of Federal Actions and Appeals under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), 42 U.S.C. § 1997e(c) and the Inherent Authority of the Federal Courts, 43 N.Y.L. Sch. L. Rev. 975, 978-85 (2000)("Dismissal of Federal Actions")("[T]he phrase, 'fails to state a claim upon [or "on"] which relief may be granted,' in all three [Prison Litigation Reform Act] dismissal provisions has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6)." (quoting 28 U.S.C. §§ 1915(e)(2), 1915A(b), 42 U.S.C. § 1997e(c))(second alteration added in Dismissal of Federal Actions)).

. . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion

to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir.

2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd., but not in Makor Issues &

Rights, Ltd. v. Tellabs, Inc.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or

purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations

in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore

v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is

insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual

allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright &

A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) . . . , on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v.

Twombly, 550 U.S. at 555.

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that,

if assumed to be true, state a claim to relief that is plausible on its face." Mink v. Knox, 613 F.3d

995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at

678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility

that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;

the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original).   The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 550 U.S. at 570]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

In conducting the initial review, a pro se plaintiff's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d at 1110.  If the Court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax  and  sentence  construction, or . . . unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110.  At the same time, however, pro se parties must file a legible pleading that complies with rule 8, which requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a).  "'It is not the role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action.'" McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir. 2014)(unpublished)[5](quoting Schupper v. Edie,

---

[5]McNamara v. Brauchler is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

193 F. App'x 744, 746 (10th Cir. 2006)).  See Pola v. Utah, 458 F. App'x 760, 761 (10th Cir.

2012)(unpublished)(affirming dismissal of complaint that "included everything but the kitchen

sink").  Allowing such pleadings to survive screening "would force the Defendants to carefully

comb through" various documents "to ascertain which . . . pertinent allegations to which a

response is warranted."  McNamara v. Brauchler, 570 F. App'x at 743.

## LAW REGARDING § 1983 AND PRETRIAL DETAINEE CLAIMS FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

Section 1983 is a "method for vindicating federal rights elsewhere conferred by those parts

of the United States Constitution and federal statutes that it describes."  Baker v. McCollan, 443

U.S. 137, 144 n.3 (1979).  See Albright v. Oliver, 510 U.S. 266, 271 (1994)(noting that § 1983

creates no substantive rights; rather it is the means through which a plaintiff may seek redress for

deprivations of rights that the Constitution establishes); Bolden v. City of Topeka, 441 F.3d 1129

(10th Cir. 2006).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State . . . subjects or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .

---

In this circuit, unpublished orders are not binding precedent, . . . and we have
generally determined that citation to unpublished opinions is not favored.
However, if an unpublished opinion or order and judgment has persuasive value
with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that
McNamara v. Brauchler, Schupper v. Edie, 193 F. App'x 744, 746 (10th Cir. 2006), Pola v. Utah,
458 F. App'x 760 (10th Cir. 2012), White v. Utah, 5 F. App'x 852 (10th Cir. 2001), Aston v.
Cunningham, 216 F.3d 1086, No. 99-4156, 2000 WL 796086 (10th Cir. 2000), and Abdelsamed v.
United States, 13 F. App'x 883 (10th Cir. 2001), have persuasive value with respect to a material
issue, and will assist the Court in its disposition of this Memorandum Opinion and Order of
Dismissal.

42 U.S.C. § 1983.  Only a "person" may be held liable under § 1983.  42 U.S.C. § 1983.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by State government officials acting under color of law that result in a deprivation of rights the Constitution secures.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  There must be a connection between official conduct and violation of a constitutional right.  Conduct that is not connected to a constitutional violation is not actionable under § 1983.  See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates.  See Monell v. Dep't of Soc. Servs, 436 U.S. 658, 691 (1978).  A plaintiff must plead that each government official, through the official's individual actions, has violated the Constitution.  See Ashcroft v. Iqbal, 556 U.S. at 676.  To succeed under § 1983, a plaintiff must allege an identified official's personal involvement in the alleged constitutional violation.  See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).  In a § 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her."  Robbins v. Oklahoma, 519 F.3d at 1249-50 (emphasis in original).  Generalized statements that the defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, are not sufficient to state any claim for relief.  See Robbins v. Oklahoma, 519 F.3d at 1249-50.

## LAW REGARDING PRETRIAL DETAINEES' RIGHT TO ADEQUATE MEDICAL CARE AND TO HUMANE CONDITIONS OF CONFINEMENT

In 1994, the Supreme Court of the United States of America held that the Eighth Amendment to the Constitution imposes a duty on prison officials to provide humane conditions of confinement and adequate medical care.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).

These conditions include adequate food, clothing, shelter, and medical care, but also a more general requirement to "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  "For those in pretrial confinement," however, "claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment." Colbruno v. Kessler, 928 F.3d 1155, 1162 (10th Cir. 2019).  A detainee may not be punished before an adjudication of guilt in accordance with due process of law.  See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 n.40, 674 (1977); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-67, 186 (1963).  Further, although a pretrial detainee's claims for denial of medical treatment proceed under the Fourteenth Amendment, courts apply the Eighth Amendment's deliberate indifference standard to evaluate these claims.  See Garcia v. Salt Lake Cnty., 768 F.2d 303, 307 (10th Cir. 1985)(holding that, although the Eighth Amendment protects the rights of convicted prisoners and the Fourteenth Amendment protects the rights of pretrial detainees, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates"); Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)(citing Bell v. Wolfish, 441 U.S. at 535)("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, . . . the Eighth Amendment standard provides the benchmark for such claims.").

In the context of a detainee's medical needs, the Tenth Circuit has held that, to state a cognizable claim, a plaintiff "'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  This standard includes both an objective component and a subjective component.  See Clark v. Colbert, 895 F.3d 1258, 1267

(10th Cir. 2018).   To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006)(quoting Farmer v. Brennan, 511 U.S. at 834).

"'A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Clark v. Colbert, 895 F.3d at 1267 (quoting Self v. Crum, 439 F.3d at 1230-33)(alteration in Clark v. Colbert, but not in Self v. Crum), The subjective component requires a plaintiff to establish that a medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(quoting Farmer v. Brennan, 511 U.S. at 837)(alteration in Mata v. Saiz, but not in Farmer v. Brennan).

Under both the Eighth Amendment and the Fifth Amendment's Due Process Clause, to establish a claim for "conditions of confinement, a plaintiff must satisfy two requirements," showing first that the deprivation is sufficiently serious, and second that the prison officials' deliberate indifference caused the deprivation.  Craig v. Eberly, 164 F.3d at 495.  To establish the sufficiently serious prong, a plaintiff "must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to inmate health or safety."  DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001)(quoting Farmer v. Brennan, 511 U.S. at 834).

## LAW REGARDING DETENTION CENTER LIABILITY UNDER § 1983

As a general rule, "a detention facility is not a person or legally created entity capable of being sued." White v. Utah, 5 F. App'x 852, 853 (10th Cir. 2001)(unpublished).  The Court has

applied this rule in the context of § 1983, holding that "a detention center is not a suable entity in a § 1983 action." Apodaca v. N.M. Adult Prob. & Parole, 998 F. Supp. 2d 1160, 1190 (D.N.M. 2014)(Browning, J.).  A detention center is not a suable entity, "because it is not a 'person' under 42 U.S.C. § 1983." Kristich v. Metro. Det. Ctr., No. CIV 15-1147 JB/LAM, 2016 WL 5387675, at *2 (D.N.M. September 2, 2016)(Browning, J.)(quoting 42 U.S.C. § 1983).  See Wishneski v. Lea Cnty. Det. Ctr., No. CIV 11-1057 JB/WPL, 2012 WL 1688890, at *2 (D.N.M. May 2, 2012) (Browning, J.)(holding that "'a detention facility is not a person or legally created entity capable of being sued'")(quoting Aston v. Cunningham, 216 F.3d 1086, No. 99-4156, 2000 WL 796086, at *4 n.3 (10th Cir. 2000)(unpublished table decision)).  "In other words, suing a detention facility is the equivalent of attempting to sue a building for purposes of § 1983." Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING ACTION UNDER COLOR OF STATE LAW

Under § 1983, liability attaches only to conduct occurring "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ." 42 U.S.C. § 1983.  Thus, the only proper defendants in a § 1983 action are those who "'represent [the State] in some capacity, whether they act in accordance with their authority or misuse it.'" Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)(quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)).  A person acts under color of State law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Polk Cnty. v. Dodson, 454 U.S. 312, 317-18 (1981).  A showing that the defendants were acting "under color of state law" is a jurisdictional prerequisite for a § 1983 action. Polk Cnty. v. Dodson, 454 U.S. at 315.  The only proper defendants in a § 1983 claim are State officials. See Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995).  To establish subject-matter

jurisdiction for a civil rights action, the plaintiff must show that the defendant acted under color of State law. See 28 U.S.C. § 1343(a)(3).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

The federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331, 1332. Section 1367 additionally grants the federal courts power to hear claims over which federal courts otherwise lack original jurisdiction, if those claims are part of the same constitutional case as claims over which the court has original jurisdiction. See 28 U.S.C. § 1367(a).

The Tenth Circuit has held that deciding whether to exercise supplemental jurisdiction is a matter of judicial discretion. See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)). The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "'When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'" Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).

## ANALYSIS

Having reviewed Moya's pleadings and briefing in the applicable law's light, the Court now analyzes Moya's claims, given that he has not responded to the Court's prior dismissal and

direction to file an amended complaint.  See MOO at 18.  The Court concludes that: (i) San Juan

Detention is not a proper defendant in a § 1983 action; (ii) the "San Juan County Adult Detention

Center Medical Providers," with the exception of "Medical Provider Sarah," are not proper

Defendants; (iii) Moya has not alleged adequately that the remaining Defendants are state actors;

(iv) Moya has not pled viable deliberate-indifference or inhumane-conditions-of-confinement

claims; (v) Moya has not alleged additional constitutional violations with sufficient specificity to

allow the Court to determine what they are; and (vi) the Court will not exercise supplemental

jurisdiction over the remaining State law claims.  Accordingly, the Court will dismiss Moya's

federal claims with prejudice, and will dismiss Moya's State law claims without prejudice.

I.      **THE COURT DISMISSES WITH PREJUDICE MOYA'S § 1983 CLAIMS AGAINST SAN JUAN DETENTION.**

As noted above, detention facilities are not subject to liability under § 1983, because they

are not "persons" as that term is used in this statutory context.  Kristich v. Metro. Det. Ctr., 2016

WL 5387675, at *2; Wishneski v. Lea Cnty. Det. Ctr., 2012 WL 1688890, at *2.  Suing San Juan

Detention as a Defendant in this action is akin to suing a building.  See Gallegos v. Bernalillo

Cnty. Bd. of Cnty. Comm'rs, 272 F. Supp. 3d at 1267.  Such claims are not viable.  Accordingly,

the Court will dismiss Moya's § 1983 claims against San Juan Detention with prejudice.

II.     **"SAN JUAN COUNTY ADULT DETENTION CENTER MEDICAL PROVIDERS" IS NOT A PROPER DEFENDANT.**

To the extent that Moya seeks to sue the entity or individual identified in the caption as

"San Juan County Adult Detention Center Medical Providers, Etc.," he must identify sufficiently

this Defendant -- or these Defendants.  Complaint at 3.  See MOO at 15.  The Tenth Circuit has

"recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides

an adequate description of some kind which is sufficient to identify the person involved so process

eventually can be served."   Roper v. Grayson, 81 F.3d 124, 126 (10th Cir.1996).   With the exception of "Medical Provider Sarah," who Moya alleges attended the meeting concerning his numerous medical grievances, he has not identified sufficiently the medical providers.  First Decl. at 4.  Accordingly, and for the reasons set forth in the MOO, the Court will dismiss this claim with prejudice as to all Medical Providers other than "Medical Provider Sarah."  First Decl. at 4.  See MOO at 15.

## III.   MOYA HAS NOT ALLEGED ADEQUATELY THAT THE REMAINING DEFENDANTS ARE STATE ACTORS.

Moya identifies Dr. Ernest, Dr. Mannas, and Global Tel as Defendants.  Additionally, as discussed above, Moya identifies "San Juan County Adult Detention Center Medical Providers, Etc." as Defendants, Complaint at 3, and the Court considers that "Medical Provider Sarah" is the sole sufficiently identified group member, First Decl. at 4.  Moya does not allege, however, that these Defendants are State actors, nor do the factual allegations support an inference that they were acting under color of State law.  Because Moya has not amended the Complaint to cure this defect, the Court dismisses with prejudice his claims against these Defendants.

## IV.   MOYA HAS NOT PLED A VIABLE FOURTEENTH AMENDMENT DELIBERATE-INDIFFERENCE CLAIM.

The allegations in Moya's pleadings are insufficient to state a viable Fourteenth Amendment deliberate indifference claim against any named Defendant.  To the extent that Moya's allegations might support a theory that certain State actors exhibited deliberate indifference to his medical needs, Moya does not name the individuals that he identifies in the pleadings as Defendants in this lawsuit.  As an example, Moya alleges that Calhoun forced him to climb up and down the stairs contrary to medical orders known to him, thereby exacerbating Moya's injuries.  See Second Decl. at 1.  Calhoun, however, is not a Defendant in this action.  As

to the individuals whom Moya identifies as Defendants, i.e., Dr. Ernest, Dr. Mannas, and "Medical Provider Sarah," not only does Moya not allege that they are State actors, but his pleadings are devoid of allegations showing that they knew of, but remained deliberately indifferent to, his serious medical needs.  See Mata v. Saiz, 427 F.3d at 751.  Mere involvement in Moya's medical care is insufficient to state a deliberate indifference claim against a prospective defendant.  The Court provided Moya an opportunity to amend his Complaint to name as Defendants those individuals who were aware of, but remained deliberately indifferent to, his serious illness or injury, stating with specificity who did what to him in violation of his constitutional rights.  See MOO at 16.  He has not amended his Complaint.  The Court therefore will dismiss these claims with prejudice.

## V.    MOYA HAS NOT PLED A VIABLE FOURTEENTH AMENDMENT CLAIM FOR INHUMANE CONDITIONS OF CONFINEMENT.

The Court construes Moya's inhumane conditions of confinement claim to arise from a single incident in which he and his cellmate were locked in their cell with an uncollected stool sample for hours.  His pleadings show that, once he alerted jail officials to the issue by filing a grievance, Webb responded by stating that he would implement procedures to prevent a recurrence of such an incident.  The Court concludes that the incident did not create a condition that was "more than uncomfortable" and did not rise "to the level of . . . posing a substantial risk of serious harm" to Moya's health.  DeSpain v. Uphoff, 264 F.3d at 973.  Moreover, Moya's allegations do not demonstrate deliberate indifference.  Instead, the allegations suggest that San Juan Detention officials took -- or at the least prospectively would take -- remedial action.  There are no allegations that the issue persisted or repeated.

## VI.   THE COURT WILL DISMISS MOYA'S REMAINING CONSTITUTIONAL CLAIMS.

To the extent that Moya seeks to pursue claims for "civil rights violations," or "cruel and unusual punishment," based on theories other than deliberate indifference to his medical needs or inhumane conditions of confinement, the Court cannot discern what those theories are, what constitutional rights were violated, or whose conduct is implicated.  The Court construes Moya's pleadings broadly, but will not craft legal theories for him.  See Abdelsamed v. United States, 13 F. App'x 883, 884 (10th Cir. 2001)(unpublished)(stating that a pro se litigant's pleadings are entitled to liberal construction, but the court is "under no obligation to craft legal theories" for him); Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009)(stating that, notwithstanding the plaintiff's pro se status, the court will not "construct a legal theory on a plaintiff's behalf").  Having determined the allegations do not state a cognizable claim for a violation of Moya's federal constitutional rights, the Court will dismiss these claims with prejudice.

## VII.   THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION.

Within the supplemental jurisdiction that 28 U.S.C. § 1367 grants, a federal court has subject-matter jurisdiction over certain State law claims.  A district court's decision whether to exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction is discretionary.  See 28 U.S.C. § 1367(c).  Under § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.  See Osborn v. Haley, 549 U.S. 225, 245 (2007); Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

The Supreme Court has stated that needless decisions of State law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  See United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966).

When all federal claims have been dismissed, a district court may, and usually should, decline to exercise jurisdiction over any remaining state claims. See Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011); Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998); Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014) (Browning, J.).  The Court is dismissing all of Moya's federal claims.  To the extent that the Court construes the Complaint as alleging tort claims under New Mexico law, the Court declines to exercise supplemental jurisdiction over the State law claims and dismisses those claims without prejudice. See Osborn v. Haley, 549 U.S. at 245.

**IT IS ORDERED** that: (i) the federal claims in Plaintiff's Complaint for Violation of Civil Rights (Prisoner Complaint), filed May 5, 2020 (Doc. 1), are dismissed with prejudice; (ii) Plaintiff Reynaldo Moya's State law claims are dismissed without prejudice; and (iii) Final Judgment shall be entered herewith.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

Reynaldo Moya
Chama, New Mexico

    *Plaintiff pro se*